UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                    :
NOHEME PEREZ,                  :
                    :
          Plaintiff,     :
                    :
       -v-              :
                    :
CITY OF NEW YORK, individually and in their official  :
capacities as police officers, YVONNE EDWARDS,  :
GEOFFREY WYRICK and JOHN or JANE DOE 1-10  :
         Defendants.    :
                    X
-------------------------------------------------------------------

20-cv-1359 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

     Plaintiff Noheme Perez ("Plaintiff" or "Perez") brings this action, alleging that she was

the victim of various constitutional violations committed by members of the New York City

Police Department ("NYPD") in connection with her May 15, 2017 arrest for resisting arrest,

N.Y. Penal L. § 205.30, aggravated unlicensed operation of a motor vehicle, N.Y. Vehicle and

Traffic Law ("VTL") § 511(1)(a), driving while ability impaired, *id*. § 1192(1), and refusal to

take a breath test, *id*. § 1194(1)(b).  Dkt. No. 1.  On April 3, 2018, Perez was permitted to agree

to an Adjournment in Contemplation of Dismissal ("ACD") in satisfaction of those criminal

charges.  Dkt. No. 44-12.  The charges against her were ultimately dismissed.  *Id*.

     Defendants Yvonne Edwards ("Edwards"),[1] Geoffrey Wyrick ("Wyrick") (collectively,

"Individual Defendants") and the City of New York ("City," and with the Individual Defendants,

"Defendants") now move for summary judgment dismissing all claims.  Dkt. No. 40.  For the

following reasons, the motion is granted in part and denied in part.  The Court denies summary

---

[1] Edwards is named in the complaint as Yvonne Edwards, but has since changed her surname to
Hallman.  For the purpose of convenience, the Court will continue to refer to her as Edwards.

judgment as to Perez's federal claim of malicious prosecution.  The Court grants summary

judgment on the remaining claims.

## BACKGROUND

The following facts are drawn from the parties' statements submitted pursuant to Rule 56

of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the Southern District

of New York and the evidence submitted in connection with the summary judgment motion.[2]

Such facts are undisputed unless otherwise indicated, and the Court draws all reasonable

inferences in favor of Perez.

On May 15, 2017, Perez doubled parked her vehicle near the northwest corner of 7th

Avenue and 122nd Street in Manhattan.  Dkt. No. 53 ¶ 1.  While doing so, her vehicle "came into

contact with" the adjacent parked vehicle, which caused "movement" in the adjacent vehicle's

sideview mirror. [3]  *Id*. ¶ 3.  At the time, a "Ms. King" was in the driver's seat of the impacted

vehicle.  The owner of the vehicle, identified as a "Mr. Riley," observed the incident from

outside the vehicle.  *Id*. ¶ 4.  Riley accused Perez of hitting his vehicle, and two then engaged in

an "intense verbal disagreement."  *Id*. ¶¶ 5–6.  Police officers arrived at the scene "as a result of

the commotion" and Riley and King informed a police officer (not named as a defendant here)

that Perez had "sideswiped their vehicle, and that it caused damage to the driver's side front door

---

[2] The record in this case is not extensive.  It consists largely of the deposition of the Plaintiff, declarations of the two Individual Defendants, and exhibits submitted by each party.  Neither party objects to the admissibility of the exhibits offered by the other.
[3] Although Perez in her deposition stated that she did not "actually hit the[ ] car" or "have an accident with another car," Dkt. No. 44-2 at 80, she concedes in her Response to Defendants' Rule 56.1 Statement that it was undisputed that she "came into contact" with the other vehicle, Dkt. No. 53 ¶ 3, and in her opposition brief, she also "concedes that [she] was at fault" for the accident, Dkt. No. 51 at 9; *see also* Dkt. No. 51 at 2 (stating that "Perez engaged in a verbal altercation with . . . Mr. Riley[,] the owner of the vehicle that Plaintiff's vehicle *came into contact with when she double-parked*" (emphasis added)).

and mirror." *Id.* ¶¶ 7–8.  Officer Edwards, who is a Defendant herein, observed the damage to the vehicle. *Id.* ¶ 9.

Edwards also observed "several bottles of wine, some of which were opened, in the backseat of Noheme Perez's vehicle." *Id.* ¶ 10.  Defendants state that Edwards observed Perez to have watery and glossy bloodshot eyes and an odor of alcohol on her breath, *id.* ¶ 11, but those facts are disputed by Perez, Dkt. No. 53 ¶ 11.  Defendants cite to the complaint report, motor vehicle collision worksheet, and criminal complaint, which all describe, using substantially the same language, that "it was determined that [Perez] was intoxicated by the smell of her breath along with blood shot glossy eyes."[4]  Dkt. Nos. 44-5, 44-7, 44-11.  Edwards was the reporting officer who prepared all three documents, *id.*, and signed the criminal complaint, Dkt. No. 44-11 at 2.  Perez cites to her deposition testimony that she had not had anything to drink that day and did not recall the last time she had drunken an alcoholic beverage prior to her arrest.  Dkt. No. 44-2 at 93.[5]

Perez was handcuffed by a dark-skinned male officer and then was escorted to the police precinct by two non-Caucasian male police officers.  Dkt. No. 53 ¶¶ 12–13.

---

[4] Plaintiff does not dispute the admissibility of these reports.  The first two such reports are likely admissible under Rule 803(6) of the Federal Rules of Evidence because they were "made in the regular course of the business activity of the Police Department and purported to be based on information from [Edwards]."  *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Loc. 10, I.L.G.W.U.*, 605 F.2d 1228, 1251 (2d Cir. 1979) (finding a complaint report admissible under Rule 803(6)); *see also Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 605 (S.D.N.Y. 2013) (listing cases in which arrest and police reports were found admissible as "either as a business record under Rule 803(6), Fed.R.Evid., or a public record under 803(8), Fed.R.Evid." and concluding similarly).

[5] Perez also submits a video exhibit tending to show that she was wearing sunglasses at the time, but she does not rely on that evidence in her response to Defendants' Rule 56.1 Statement.  Dkt. No. 52-3.

Edwards is an African American female police officer.  *Id.* ¶ 16.  Defendant Wyrick is a Highway Patrol Officer who started his tour of duty at 11:15 p.m., after Perez was already in police custody.[6]  *Id.* ¶ 19.  He is a Caucasian male.  *Id.* ¶ 18.

At the precinct, Edwards conducted a pat-down search of Perez without removing any clothing.  *Id.* ¶ 15.  After Perez was arrested but before she was charged, Edwards ran a computer check of Perez's driver's license and discovered that her license was suspended for failure to answer a New York summons.  Dkt. No. 53 ¶ 14; *see also* Dkt. Nos. 44-3 ¶ 9 (Edwards' declaration stating that she "conducted a computer check of the New York State Department of Motor Vehicle Records, and learned that Noheme Perez's driver's license was suspended for failure to answer a New York summons"); 44-11 (Edwards' criminal complaint stating that "[she] knew that [Perez] knew [her] license was suspended because the computer check revealed that [her] license was suspended for failure to answer a New York summons and all such summonses have printed on them, 'If you do not answer this ticket by mail within fifteen days your license will be suspended'.  The suspension occurs automatically (by computer) within four weeks of the defendant's failure to answer.").

Perez was taken to Harlem Hospital because she claimed that she needed medical treatment.[7]  Dkt. No. 44-10.  At the hospital, Wyrick was directed to perform a blood alcohol test on Perez.  Dkt. No. 53 ¶ 20.  Defendants claim that Perez refused to authorize the blood alcohol test at the Hospital, *id.* ¶ 21, but that fact is disputed.  Defendants rely on the declaration of

---

[6] Wyrick's declaration states that he began his tour at 10:15 P.M.  Dkt. No. 44-4 ¶ 3.  This discrepancy relative to the Rule 56 Statement is immaterial to the outcome of this opinion.

[7] An NYPD Case Investigation Report states that Perez was taken to the hospital when she stated that she needed medical attention.  Dkt. No. 44-10 at 4.  Because the report is not material to the Court's consideration of the motion for summary judgment, the Court need not determine whether it would be admissible in evidence.

Wyrick that he advised Perez of her rights regarding the taking of a test and that Perez refused to permit him to perform a blood alcohol test, Dkt. No. 44-4 ¶ 7.  An NYPD Patrol Services Bureau Report dated January 3, 2018 states that Perez was asked at the precinct whether she would agree to a blood test for alcohol and she agreed.  It also states that Edwards noted on Perez's paperwork that she had refused a blood test.  Dkt. No. 44-10 at 4.  It is undisputed that Wyrick prepared an "Intoxicated Driver Examination – Blood Form," on which he noted Perez's alleged refusal of the blood test.  Dkt. No. 53 ¶ 22; *see also* Dkt. No. 44-8 (Intoxicated Driver Examination Form).  Perez testified at her deposition that she "was given an option and . . . was told that it would be okay if [she] can do blood."  Dkt. No. 44-2 at 106.  She also recalled that the officer "conducting the sobriety test said that . . .  we can do th[e blood test] at the hospital," and that "he required [her] to go to the hospital for the blood testing."  *Id*. at 107.  She also "offer[ed] to do the blood test . . . at the precinct."  *Id*.  She further testified that when they arrived at the hospital, they "stood waiting and nothing ever happened and then from the hospital I was transported over to the precinct."  *Id*.  She stated that by then, she "had no sobriety test, . . . other than what the doctor stated . . .  [that] he does not find the patient to be intoxicated."  *Id*.  The hospital report dated May 15, 2017 states that the "patient is not intoxicated."  Dkt. No. 52-1.  Afterwards, Wyrick resumed patrol.  Dkt. No. 52 ¶ 22.

Perez was booked at the precinct on charges of resisting arrest, N.Y. Penal L. § 205.30, aggravated unlicensed operation of a motor vehicle, N.Y. VTL § 511(1)(a), driving while her ability was impaired, *id*. § 1192(1), and refusal to take a breath test, *id*. § 1194(1)(b).  Dkt. No. 53 ¶ 25; *see also* Dkt. No. 44-6 (arrest report listing charges).  Edwards signed a criminal complaint dated May 16, 2017 that similarly charged her with resisting arrest, N.Y. Penal Law § 205.30, aggravated unlicensed operation of a motor vehicle, N.Y. VTL § 511(1)(a), driving

while ability impaired, *id*. § 1192(1), operating a motor vehicle while intoxicated, *id*. § 1192(3), and unlicensed driving, *id*. § 509(1), but not with refusal to perform a breath test.  Dkt. No. 53 ¶ 26.

Defendants state that Edwards did not use excessive force against Perez and did not observe any officer use excessive force against her.  Dkt. No. 53 ¶ 17.  Defendants rely on Edwards' declaration which states the same.  Dkt. No. 44-3 ¶ 11.  Perez disputes that fact in her Response to Defendants' Rule 56.1 Statement.  Dkt. No. 53 ¶ 17A.  Perez relies on three videos produced by the City, but she submitted only two of the cited videos to the Court.[8]  *See* Dkt. No. 52-5a; Dkt. No. 52-6a.  Neither video is of the arrest scene or depicts Edwards or Wyrick.  The first video is of Perez being removed from her holding cell to the "highway room" at the precinct and, according to Perez, shows her arm being "twisted behind her back and wrenched over her head."  Dkt. No. 53 ¶ 17A.[9]  That video shows five officers arriving at her holding cell, three handcuffing her behind her back while the other two stand outside, and all officers then escorting Perez from her cell.  Dkt. No. 52-5a.  A Caucasian male officer holds her shoulder under her handcuffed wrists as he guides her, hunched over, out of the cell.  *Id*.  The second video is of

---

[8] Having not received the third video, the Court declines to consider it as support for Perez's contention.  *See, e.g.*, *A.B. by Alverez v. United States,* 2019 WL 10302175, at *7 n.15 (S.D.N.Y. Apr. 17, 2019) ("While Plaintiffs provide a citation to 40:17-24, no such deposition testimony was attached to any papers submitted to this Court.  Thus, Plaintiffs have failed to support their contention.").

[9] Perez, in her deposition, refers to additional incidents of allegedly hostile behavior from NYPD officers, including an incident in which while she was being placed in her cell, "another female officer came and . . . was being very aggressive . . . .  In fact, she offered to even fight me and she pushed me in the cell, telling me that if I wanted to fight her to come on."  Dkt. No. 44-2 at 98.  She also alleges that the police officers "slammed [her sunglasses] on the desk, cracking it," when she arrived at the precinct.  *Id*. at 100; *see also* Dkt. No. 44-10 at 4 (NYPD Case Investigation Report describing her allegations).  Because neither of these incidents were alleged in Perez's complaint, nor are they raised in her opposition to summary judgment, the Court does not address them.

Perez in the highway room.  Five officers enter with Perez, and the same Caucasian officer presses her body against the wall, with her face forward, while another officer helps him remove her handcuffs.  The officers then bring Perez over to a chair.  Perez appears to rock back slightly (although the cause is unclear), and Perez yells at the officers as they make her sit down and handcuff her to the chair.  Dkt. No. 52-6a.

Perez does not submit a Rule 56.1 Counterstatement but her deposition is before the Court.  With respect to the incident in the holding cell, Perez testified to the following:

> . . . I was removed from that holding cell and then put -- I was put shackles on the bottoms of my feet and then taken upstairs . . . the . . . officer . . . grabbed me and pulled me up the stairs and as I'm going up the stairs he is grabbing -- while I'm having shackles on my feet he is pulling me and pushing me at the same time, like literally so I can trip and fall and I'm actually falling, so I'm going up the stairs and I'm stumbling and I'm hitting my -- I'm hitting my knee into the stairs as I'm going up and then -- and he is pulling me back up with the handcuffs, pulling my arm all the way up and I'm like telling him he is hurting me, so it's almost like he is throwing me on the floor and pulling me back up like I was a Yo-yo and then just pulling me up and down while holding my two arms in the back, lifting my arm back up with the cuffs all the way back up as he is pushing me to walk up the stairs, so he is pushing me to walk up the stairs and I'm just tripping from the shackles as I'm trying to walk up each stair carefully with the shackles on my foot.

*Id*. at 104–05.  Perez has not named the officer at issue in the complaint and testified that Edwards was not present for the incident.  *Id*. at 112.  Afterwards, Perez told a doctor that this incident—her transportation from the holding cell to the highway room—was the cause of her shoulder pain.  *Id*. at 123.  To address that injury, she began physical therapy, took pain medication, and underwent surgery for her shoulder, *id*. at 128, which was later harmed again by an unrelated police encounter, *id*. at 136–41.

At her deposition, Perez also testified that the wine bottles in her car were part of a "wine tasting kit" used to promote a winery through wine tastings at liquor stores.  *Id*. at 85.  She had conducted such tastings at "a few" liquor stores earlier that day.  *Id*. at 90–91.  Although she could not remember how many bottles of wine were in her car that day, she stated that "[i]t was

like [a] few bottles. . . . I think it was like seven samples I had.  I can't remember exactly, but there were a few bottles." *Id*. at 92.  Those bottles were "in the back seat of [her] car" and "in a crate." *Id*.  Some of the bottles from the wine tastings were "already opened, . . . left over from the previous jobs." *Id*.  "[She was] not allowed to . . . discard them, so . . . [sh]e ha[d to] transfer it over to the other location." *Id*.  At the time of the car accident, she was "on [her] way to another wine tasting," the second one of the day, *id*. at 92–93, with her previous wine tasting having taken place from 1:00 to 4:00 P.M. that day, *id*. at 93.  At such wine tastings, she claimed that she did not "taste any of the wine [her]self" because she was "not allowed to." *Id*. at 93.

With respect to the arrest, Perez testified that from the "demeanor that was presented," it "appeared that one of the officers . . .  knew [Riley]." *Id*. at 83.  Perez testified that Riley was "explaining what was going on, that [his] car was hit," and that she disputed his statements to the officers, saying that his statements were "not true, [that] he just got into my car and . . . the whole reason for this whole argument was because he just drove my car." *Id*. at 83–84.  She also testified that she took her phone out to "record [what Riley was] saying" and "where exactly is he [sic] claiming that there was anything done to his vehicle." *Id*. at 84.  Riley then "grabbed [her] phone out of [her] hand in the presence of [an] officer" and the police officer told him to "just give her back the phone." *Id*.  Riley then "threw the phone on the floor . . . , with the intention of just damaging it and it cracked, the screen in fact cracked." *Id*. at 85.  The officers, according to Perez, "[did] not say[] anything to [Riley] . . . when he was . . . being aggressive and he snatched the phone out of [her] hand . . . and . . . threw the phone." *Id*. at 84–85.[10]

---

[10] Perez does not have her video from the scene of the accident because she did not back up the memory of the phone prior to replacing it.  *Id*. at 88.

Perez testified that she found Riley's grabbing of her phone, and the subsequent passiveness of the officers, "to be alarming." *Id*. at 85.  She explained that "when I went to go get my phone[,] I wanted to record the . . . names of all the officers that [we]re . . . conducting this . . . investigation of what is going on here." *Id*.  She then stated that "[t]he next thing I know, one of the officers was just coming [sic] in the back of my car and she sees the wine tasting kit . . . . just after I started to record all of the names of the officers." *Id*.  Perez believed that when she "started to record all of the names of the officers . . . [,] that became upsetting for [the officer] and then she sa[id] [']arrest her, she is intoxicated,['] just like that." *Id*. at 86.  Perez then testified that "[t]he next thing you know, they just grabbed me, grabbed my phone, grabbed all of my things and they put me in handcuffs." *Id*.  She recalled telling the officers, "I'm not even driving the car . . . the car is parked . . . you are just arresting me for driving while intoxicated because you see the things of wine . . . in the back of my car." *Id*.  As for her phone, she stated that "[t]hey snatched my phone out of my hand because . . . I was recording them . . . . [B]ecause of [the recording] they probably got upset, they grabbed my phone and all of a sudden they just cuffed me." *Id*. at 95.  She further stated that she "think[s]" that it was "a form of retaliation, [that they] decided to abuse their authority." *Id*. at 145.

Finally, she alleged that after she was handcuffed, the officers were "pushing [her]" "going back to the precinct" by "placing their hands on [her] . . . biceps, while [she was] cuffed and pushing [her] forward to walk faster than . . . what [she was] able." *Id*. at 96.  She further stated "[they were] pushing me to walk . . . with their intent for me to . . . trip or fall or something -- you know, just pushing me in a way that was uncomfortable for me to walk." *Id*.  She later claimed that she "complain[ed] that they [we]re hurting [her]" and that she subsequently had "black and blues on [her] biceps" from their grip on her. *Id*. at 143.  According

to Perez, "over five officers" escorted her back to the precinct, but she was unable to identify several of them because "the rest of them were . . . in the back." *Id*. at 144–45. She did not identify Edwards as one of the officers.

It is undisputed that Wyrick did not use any excessive force and did not observe any officer use excessive force against Perez. Dkt. No. 53 ¶ 24. His only interaction with Plaintiff was at the hospital. *Id.* ¶ 23.

Perez agreed to an ACD in April 2018 in satisfaction of those criminal charges, *id*. ¶ 27, and the charges were dismissed in October 2018, Dkt. No. 44-12.

## PROCEDURAL HISTORY

Perez filed her complaint against the Defendants on February 17, 2020. Dkt. No. 1. She brings nineteen claims against the Defendants: (1) Unlawful search and seizure under New York law against the Defendants and under 42 U.S.C. § 1983 against the Individual Defendants; (2) false arrest and false imprisonment under New York law against the Defendants and under 42 U.S.C. § 1983 against the Individual Defendants; (3) assault and battery under New York law against the Defendants; (4) excessive force under 42 U.S.C. § 1983 against the Individual Defendants; (5) malicious prosecution under New York law against the Defendants and under 42 U.S.C. § 1983 against the Individual Defendants; (6) malicious abuse of process under New York law against the Defendants and under 42 U.S.C. § 1983 against the Individual Defendants; (7) denial of the right to a fair trial under New York law against the Defendants and under 42 U.S.C. § 1983 against the Individual Defendants; (8) deprivation of rights and the denial of equal protection under New York law and 42 U.S.C. §§ 1981 and 1983 against the Individual Defendants; (9) conspiracy to interfere with civil rights and failure to prevent conspiracy under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 against the Individual Defendants; (10) failure to intervene under New York law and 42 U.S.C. § 1983 against the Individual Defendants; (11)

megligent hiring, training, retention, and supervision under New York State law; and (12) municipal "*Monell*" liability under 42 U.S.C. § 1983 against the City.

After some delays caused by the Covid-19 pandemic, Dkt. No. 9, and by an unsuccessful attempt to resolve the dispute through the Southern District of New York's mediation program, Dkt. No. 15, an initial pretrial conference was held on February 10, 2021, Dkt. No. 21. Discovery concluded by October 25, 2021. Dkt. No. 25.

Defendants filed the instant motion for summary judgment on January 21, 2022. Dkt. No. 40. Attached to the motion for summary judgment and accompanying Rule 56.1 Statement, Defendants include the deposition of Perez, declarations from both Individual Defendants, and assorted documents and media related to Perez's arrest, including an arrest report, motor vehicle collision worksheet, intoxicated driver examination form, surveillance videos, case investigation final report, criminal complaint, and certificate of disposition following her criminal proceedings. Dkt. No. 44. Perez filed her opposition brief on March 25, 2022. Dkt. No. 51. Her opposition includes video exhibits of her arrest and treatment at the precinct, her hospital record, and deposition excerpts. Dkt. No. 52. Defendants filed a reply memorandum in further support of the motion for summary judgment on April 29, 2022. Dkt. No. 62. The Court heard oral argument on the motion on August 31, 2022.

## RELEVANT LEGAL STANDARDS

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether

there are any genuine issues of material fact, the Court must view all facts "in the light most

favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008),

and the movant bears the burden of demonstrating that "no genuine issue of material fact exists,"

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  It may not rely

on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d

159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on

conclusory statements, or on mere assertions that affidavits supporting the motion are not

credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation

omitted).  Rather, to survive a summary judgment motion, the opposing party must establish a

genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P.

56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts,"

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also*

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  If "the party opposing summary judgment

propounds a reasonable conflicting interpretation of a material disputed fact," summary

judgment must be denied.  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).

Local Civil Rule 56.1 of the Southern District of New York prescribes the manner and

method in which a party is to present undisputed issues of fact to the Court.  The moving party

must annex to its notice of motion "a separate, short and concise statement, in numbered

paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. Loc. Civ. R. 56.1(a). The party opposing the motion must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id*. 56.1(b). All statements in a Local Rule 56.1 submission "must be followed by citation to evidence which would be admissible." *Id*. 56.1(d). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." *Id.* 56.1(c).

Pursuant to Local Civil Rule 56.1, the movant's "statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record." *Knight v. N.Y.C. Hous. Auth.*, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007); *see, e.g.*, *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 243 (S.D.N.Y. 2013) (holding that denials that are not supported by citations to admissible record evidence are to be disregarded); *see also N.Y. Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648–49 (2d Cir. 2005) (upholding a grant of summary judgment where "[t]he district court, applying [Northern District of New York's analogue to S.D.N.Y. Loc. Civ. R. 56.1] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *Colton v. N.Y. Div. of State Pol.*, 2017 WL 5508911, at *2 (N.D.N.Y. Feb. 8, 2017) ("The failure to properly controvert a supported statement of fact by

pointing to admissible evidence contravening the movant's evidence results in the movant's statement being deemed admitted."). A court "'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)). However, the district court "may in its discretion opt to conduct an assiduous review of the record." *Id.*; *see also W.D. v. Rockland Cnty.*, 521 F. Supp. 3d 358, 372 (S.D.N.Y. 2021) ("Whereas the Court need only consider the cited materials, the Court may also rely on evidence in the record even if uncited."); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

## B.   Personal Involvement

A defendant may be sued for damages for a constitutional violation only if they were involved in the constitutional violation. "[T]he personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted) (citation omitted); *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (same) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Sanders v. Simonovic*, 2021 WL 707060, at *12 (S.D.N.Y. Feb. 23, 2021) (dismissing complaint against certain defendants for failing to allege their personal involvement); *McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (same).

## C.   Qualified Immunity

A police officer is entitled to qualified immunity if "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Id.* (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)). "Under the doctrine of qualified immunity, 'government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tracy v. Freshwater*, 623 F.3d 90, 95–96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 54, 60–61 (2d Cir. 2009)).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## DISCUSSION

The complaint[11] alleges that Plaintiff was unlawfully stopped, arrested, and detained on May 15, 2017, "without a valid warrant, reasonable suspicion or probable cause," Dkt. No. 1 ¶ 2, and then was "charged with Operating a Motor Vehicle While Intoxicated and other related charges," when she "had not committed any crime or violation of law, including Operating a Motor Vehicle While Intoxicated," *id.* ¶¶ 2, 25.  Plaintiff further alleges that at the time of her arrest, Defendants "violently grabbed and struck plaintiff's person with their outstretched arms, which prevented plaintiff from exercising her freedom of movement," *id.* ¶ 19, "then proceeded to apply excessive force against plaintiff by aggressively shoving her before proceeding to violently and unnaturally contort her arms and wrists behind her back and without her consent or other legal justification therefor," *id.* ¶ 20, and finally "applied the handcuffs to Plaintiff's person in an excessively forceful and tight fashion, which caused her to suffer substantial pain and

---

[11] The complaint's "Factual Charges" focuses on the events immediately prior to her arrest, Dkt. No. 1 ¶¶ 16–21, 28, the filing of Edwards' criminal complaint and subsequent proceedings, *id.* ¶¶ 23–27, and generalized facts and news articles concerning NYPD conduct and policy in support of Perez's *Monell* claim, *id.* ¶¶ 33–47.  In her deposition, Plaintiff testified to conduct other than what is alleged in the complaint.  But the complaint omits allegations of events at the precinct, including any allegations involving her sunglasses being damaged, an officer attempting to fight her, or her transportation from the holding cell to the highway room.  The Court considers only the allegations in the complaint.

discomfort," *id*. ¶ 21.  The complaint also alleges that Edwards signed the criminal complaint against her with "complete knowledge that the information forming the bases for the criminal charges therein was completely fabricated, incomplete[,] and misleading," namely, the assertions that Perez had "watery, glossy eyes and the odor of alcohol on her breath, that plaintiff informed defendants that she had driven a car[,] and that there was probable cause to believe that plaintiff had operated motor vehicle while intoxicated by alcohol." *Id*. ¶¶ 23–24.  Perez concluded that her prosecution occurred "solely because of her status as a Hispanic or Latina woman," *id*. ¶ 25, and "deprived [her] of her liberty and freedom of movement after her criminal court arraignment, because she was compelled to personally appear in court after her arraignment to contest the false charges levied against her," *id*. ¶ 27.[12]

Defendants seek summary judgment on all claims, arguing: (1) probable cause existed for Perez's arrest, eliminating her claims of false arrest and imprisonment, unlawful search and seizure, malicious prosecution, and abuse of process; (2) Perez's testimony fails to establish the personal involvement of Edwards and Wyrick in any instances of excessive force, and that the record evidence was otherwise independently insufficient to show excessive force, eliminating her excessive force claims; (3) the resolution of the criminal charges against her in an ACD was not a resolution in her favor, eliminating her malicious prosecution claims; (4) the record evidence fails to show any illegitimate collateral objective of the Defendants or that Defendants

---

[12] Perez's sole factual allegation in her complaint regarding events at the precinct was that Defendants conducted an "illegal strip search and cavity inspection" of Perez.  Dkt. No. 1 ¶ 22. However, Perez concedes in her Response to Defendants' Rule 56.1 Statement that only a "pat-down" search was conducted in which "no clothing was removed," Dkt. No. 53 ¶ 15, and does not defend the allegation from the complaint in her motion for summary judgment.  The Court finds the claim abandoned.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (finding that in the case of counseled parties, the district court may find that a partial opposition abandons undefended claims).

coerced Perez to do anything outside the scope of the legal process, eliminating her abuse of process claims; (5) the record evidence fails to show evidence of the Defendants' malice and was otherwise speculative, eliminating her claims for denial of the right to a fair trial; (6) the evidence fails to reveal anything about those similarly situated to Perez and their differential treatment, eliminating her equal protection claims; (7) there is insufficient evidence as to whether an agreement existed that was between people from more than one organization, eliminating her conspiracy claims; (8) there is insufficient evidence that Edwards or Wyrick observed or were in a position to prevent any unlawful conduct, eliminating her failure to intervene claims; (9) the Individual Defendants are entitled to qualified immunity because there was arguable probable cause for Perez's arrest; (10) there is no underlying constitutional violation and otherwise insufficient evidence to show any City policy or custom to violate constitutional rights, eliminating her *Monell* claim; (11) Perez's state claims should be dismissed on the alternative grounds that she failed to file a timely notice of claim, let alone plead that she had done so, and that such claims were otherwise barred by the statute of limitations; and (12) governmental immunity, and the lack of any record evidence concerning the hiring of the Individual Defendants, eliminates her negligent hiring and supervision claim.

In her opposition brief, Perez principally contends that Defendants "lacked probable cause to arrest, detain, and prosecute" her and that there are triable issues of fact that preclude summary judgment on her federal claims. Dkt. No. 51 at 2.

The Court considers first Wyrick's motion for summary judgment. It then addresses each of the federal constitutional claims Plaintiff continues to press against the Individual Defendants. Finally, the Court addresses the *Monell* claim. In her opposition to the motion for summary judgment, Plaintiff states that she waived all of her "state law claims and federal claims for fair

trial." *Id.* at 1.[13]  At oral argument for this motion, Perez stated that the only claims that she was

continuing to pursue were the federal constitutional claims for false arrest, malicious

prosecution, excessive force, failure to intervene, and the *Monell* claim and that she was

abandoning all other claims.  Accordingly, the Court does not address those claims here.

## I.     Defendants Are Entitled to Summary Judgment on the False Arrest, Excessive Force, and Failure to Intervene Claims Against Wyrick

In her complaint, Perez asserts Section 1983 claims of unlawful search and seizure, false

arrest and false imprisonment, excessive force, malicious prosecution, malicious abuse of

process, and failure to intervene against Wyrick.  Dkt. No. 1.  She alleges that Wyrick arrested

her, *id.* ¶ 18, that he used excessive force against her at the time of her arrest, *id.* ¶¶ 19–21, that

he gave "false, misleading, or incomplete information to the District Attorney's Office" that

Plaintiff exhibited signs of intoxication, *id.* ¶ 24, and that he was involved in the decision to

arrest her without probable cause and failed to intervene when he observed others were arresting

her without probable cause, *id.* ¶ 28.  Defendants argue that they are entitled to summary

judgment on the claims against Wyrick because he was not personally involved in the

constitutional violations Plaintiff alleges.  Dkt. No. 41 at 10, 17.

Defendants have established Wyrick's entitlement to summary judgment on the false

arrest, excessive force, and failure to intervene claims against Wyrick.  It is undisputed that

Wyrick did not start his tour of duty until after Perez was in custody.  Dkt. No. 53 ¶ 19; *see also*

---

[13] Even if Perez did not intentionally waive her tort claims under New York law, those claims cannot survive summary judgment because she failed to conform to New York's notice-of-claim requirements for initiating tort suits against municipalities.  "Under New York law, a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action." *Rentas v. Ruffin*, 816 F.3d 214, 226–27 (2d Cir. 2016); *see also* N.Y. Gen. Mun. L. § 50-e.  This doctrine "applies with equal force to state law claims against municipal employees."  *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 355 (S.D.N.Y. 2007) (citing N.Y. Gen. Mun. L. § 50-i(1)). Perez does not dispute in her opposition that she did not file a notice of claim.

Dkt. No. 44-4 (Wyrick's declaration stating that he "began his tour at 10:15PM, and was directed to report to the Harlem Hospital for the purpose of performing a blood alcohol test on Noheme Perez."). It is further undisputed that Wyrick's only interaction with Perez was at the hospital. Dkt. No. 53 ¶ 23. Finally, it is undisputed that Wyrick "did not use any excessive force and did not observe any officer use excessive force against Noheme Perez." *Id.* ¶ 24.

Under these circumstances, Defendants are entitled to summary judgment on the aforementioned claims. Plaintiff identifies no evidence from which a reasonable jury could find that he was personally involved in any of the alleged constitutional violations. *See Victory*, 814 F.3d at 67 (stating that personal involvement is a prerequisite to an award of damages under Section 1983). There is no evidence that Wyrick arrested Perez or was involved in her arrest. He also did not use excessive force against her. And because he was not present for her arrest and did not otherwise observe the use of excessive force against her, he cannot be held liable for failure to intervene.

There is sufficient evidence, however, that Wyrick was personally involved in conduct giving rise to the malicious prosecution claim. Wyrick completed an "Intoxicated Driver Examination – Blood" form noting that Perez refused a blood test, that she had "strong" odor of alcohol and "watery" eyes, and that she was "under the influence of Intoxicating Beverages/Drugs"—all statements that Perez contends to be false. Dkt. No. 44-8. Importantly, the Intoxicated Driver Examination – Blood form provides that the original copy of that form is distributed to the "District Attorney." *Id.* (final line of the form). That suffices for personal involvement, as "[a] police officer can *also* initiate a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor," *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014)

(emphasis added); *see also Israel v. City of New York*, 2018 WL 11219076, at *7 (S.D.N.Y. Sept. 29, 2018) (noting that "a defendant 'creat[ing]' the false information that is forwarded to prosecutors" suffices for malicious prosecution claim); *Maldonado v. City of New York*, 2014 WL 787814, at *6 (S.D.N.Y. Feb. 26, 2014); *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) (same); *Brome v. City of New York*, 2004 WL 502645, at *5 (S.D.N.Y. Mar. 15, 2004) ("[A]n arresting officer may be held liable for malicious prosecution 'when [that] officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" (quoting *Riccuiti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997))).  Although Wyrick did not sign the criminal complaint, such involvement is not necessary for personal involvement for a malicious prosecution claim.  *See Costello,* 20 F. Supp. 3d at 415; *see also Aguirre v. City of New York*, 2017 WL 4236552, at *9 (E.D.N.Y. Sept. 22, 2017) (denying summary judgment for malicious prosecution against defendant who filled out arrest report, even though defendant did not sign criminal complaint and his colleague sent the arrest report to District Attorney's office).  In addition to the District Attorney, a copy is also provided to the "Arresting Officer," Dkt. No. 44-8, who is Edwards, Dkt. No. 44-6.  The form was completed several hours before Edwards signed her criminal complaint.  *See* Dkt. No. 44-8 (listing completion of form at 2:46 P.M.), Dkt. No. 44-11 (listing completion of criminal complaint at 5:00 P.M.).  A jury could reasonably infer that Edwards saw the form and relied on its allegedly false contents when preparing her criminal complaint to the District Attorney's office.

## II.     False Arrest and Unreasonable Search and Seizure

Plaintiff alleges in her complaint that "Defendants, acting under color of state law, unlawfully stopped, arrested and detained Plaintiff without a valid warrant, reasonable suspicion or probable cause to do so."  Dkt. No. 1 ¶ 2.  In particular, she alleges that she was "illegally

approached, stopped, questioned, searched and seized by Defendants, including EDWARDS and

WYRICK, as she had committed no crime or violation of the law." *Id.* ¶ 18.  She further alleges

that "Defendants, including EDWARDS and WYRICK, then violently grabbed and struck

plaintiff's person with their outstretched arms, which prevented plaintiff from exercising her

freedom of movement." *Id.* ¶ 18.

Defendants argue that they are entitled to summary judgment because the facts known to

the officers at the time of Plaintiff's arrest provided probable cause to believe that she had

committed a crime.  Defendants rely on the undisputed facts that the officers witnessed a

disagreement, that Riley and King had informed the police that Perez had hit Riley's vehicle,

which had been occupied by King; that Edwards observed the damage to Riley's vehicle and

several open bottles of wine in the backseat of Perez's car; that Edwards believed Perez to be

intoxicated based on her physical appearance and odor of alcohol; and that Perez's driver's

license was suspended at the time of the incident.  Dkt. No. 41 at 7–8.  Defendants also argue

that even if Edwards erred in finding probable cause, she is still entitled to qualified immunity

because there was at least *arguable* probable cause to arrest Perez.  *Id.* at 30–31.  In opposition,

Perez argues that her "version of the events" shows that "Defendants completely lacked probable

cause," or at least "give[s] rise to a triable issue-of-fact as to if and when Defendants ascertained

and formulated their probable cause analysis."  Dkt. No. 51 at 8–9; *see id.* at 18–19 (arguing

similarly against qualified immunity).

"[T]o maintain a section 1983 action, two essential elements must be present: (1) the

conduct complained of must have been committed by a person acting under color of state law;

and (2) the conduct complained of must have deprived a person of rights, privileges, or

immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d

545, 547 (2d Cir. 1994) (citations omitted).  A Section 1983 claim for false arrest "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  The substantive elements of a false arrest claim under Section 1983 are "substantially the same as [for] a claim for false arrest under New York law."  *Id.*  To establish a claim for false arrest and imprisonment, a plaintiff must prove: "(1) the defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) did not consent to such confinement; and (4) the confinement was not otherwise privileged."  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *see also Savarese v. City of New York*, 547 F. Supp. 3d 305, 324 (S.D.N.Y. 2021), *appeal withdrawn*, 2022 WL 351054 (2d Cir. Jan. 14, 2022).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007); *see also Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("The existence of probable cause will defeat a claim of . . . unreasonable search and seizure." (internal quotation marks omitted)).

"Probable cause to arrest exists when [police] officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).  It is a "fluid concept—turning on the assessment of probabilities in particular factual contexts," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), and satisfied by "the kind of fair probability on which reasonable and prudent people . . . act," *Florida v. Harris*, 568 U.S. 237, 244 (2013) (internal quotation marks and alteration omitted).  The relevant facts for assessing probable cause are "those facts available

to the officer at the time of the arrest and immediately before it." *Fabrikant*, 91 F.3d at 217.  The existence of probable cause "may be determinable as a matter of law if there is no dispute as to the pertinent events and knowledge of the officer[]," but "may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852.

"Where a defendant asserts the defense of qualified immunity, the standard is even more relaxed." *Savarese*, 547 F. Supp. 3d at 324.  An arrest is objectively reasonable if there was "arguable probable cause," which "exists when 'a reasonable police officer in the same circumstances and possessing the same knowledge was the officer in question could have reasonably believed that probable cause existed in light of well-established law.'" *Cerrone*, 246 F.3d at 202–03 (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997)).  In other words, an officer's probable cause determination is objectively reasonable if "officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins*, 478 F.3d at 88.

The police may effect an arrest for a traffic infraction, with the consequences that follow from an arrest.  *See United States v. McFadden*, 238 F.3d 198, 201–02 (2d Cir. 2001) (holding that under New York law, the police may arrest someone without a warrant for a petty offense and that petty offenses include traffic infractions); *Harris v. City of New York*, 2022 WL 462391, at *6 (E.D.N.Y. Feb. 15, 2022) ("Taking [sections of New York Criminal Procedure Law and the VTL] together, a violation of the traffic laws constitutes an 'offense' subject to a warrantless arrest under New York state law." (quoting *Noel v. Cnty. of Nassau*, 2015 WL 541461, at *7 (E.D.N.Y. Feb. 7, 2015))).  Moreover, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S.

318, 354 (2001) (holding that a custodial arrest for a seatbelt violation was constitutional under the Fourth Amendment); *see Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (noting that the police may arrest for a speeding traffic violation only punishable by a fine); *cf. McDermott v. City of New York*, 2002 WL 265127, at *6 (S.D.N.Y. 2002) (affirming the constitutional validity of an arrest for violation of an open container law in a non-vehicle context). *But see Harris*, 2022 WL 462391, at *6 (concluding that an arrest was proper but also expressing concern about allowing custodial arrests for non-criminal traffic violations); *Glasgow v. Beary*, 2 F. Supp. 3d 419, 424 (E.D.N.Y. 2014) (arguing that *Atwater* should not be interpreted to allow arrests for non-criminal traffic violations).

Defendants argue that the police had probable cause, or at least arguable probable cause, to believe that Perez had committed the state law crimes of (1) aggravated unlicensed operation of a motor vehicle, N.Y. VTL § 511(1)(a); (2) driving under the influence of alcohol, *id*. § 1192.01; (3) possession of an open container of an alcoholic beverage, *id*. § 1227; and (4) double parking. The Court need only find that the undisputed facts establish the existence of probable cause as to one of these violations to determine that Perez's arrest was privileged and that Defendants are entitled to summary judgment on the false arrest claim. *See Guan v. City of New York*, 37 F.4th 797, 805 (2d Cir. 2022) ("[I]f probable cause existed to arrest a defendant for a criminal violation, 'it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.'" (quoting *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (finding that the inquiry is based on objective probable cause to arrest for any offense, not whether the officer had probable cause to arrest for the specific offense invoked at the time of the arrest).

There is no genuine issue of fact that the police had probable cause to believe that Perez committed the crime of possession of an open container of an alcoholic beverage under New York VTL § 1227.  That section provides, in pertinent part, that "[t]he drinking of alcoholic beverages, or the possession of an open container containing an alcoholic beverage, in a motor vehicle located upon the public highways or right-of-way public highway is prohibited.  Any operator or passenger violating this section shall be guilty of a traffic infraction."  N.Y. VTL § 1227 (2017).  Notably, the provision is worded in the disjunctive.  Either the drinking of alcoholic beverages or the possession of an open container containing an alcoholic beverage is prohibited.  Importantly, Section 1227 does not require that there be an intent to consume the container containing the alcoholic beverage.  A prior version of Section 1227 required that the defendant possess an intent to consumer the alcoholic beverage, *see* N.Y. VTL § 1227 (1999) ("The drinking of alcoholic beverages, or the possession, *with intent to consume*, of an open container containing an alcoholic beverage, in a motor vehicle being driven upon the public highways is prohibited." (emphasis added)), but that requirement was eliminated when the law was amended in 2000.  Vehicle and Traffic—Alcoholic Beverages Consumption or Possession, 2000 Sess. Law News of N.Y. Ch. 140 (S. 7365) (McKinney).  The legislative history reflects that the purpose of the amendment was, at least in part, to "help reduce the incidents of drunk driving on our highways."  Letter from Patricia K. McGee to James M. McGuire, Counsel to the Governor, dated July 7, 2000, *available in* New York Bill Jacket, 2000 S.B. 7365, Ch. 140.  A "public highway" is defined broadly as "[a]ny highway, road, street, avenue, alley, public place, public driveway or any other public way."  N.Y. VTL § 134.

The undisputed facts support that the police had probable cause to believe that each of these elements were satisfied as to Perez when they arrested her.  *See Hunter v. Bryant*, 502 U.S.

224, 228 (1991) (holding that "[p]robable cause existed if at the moment the arrest was made[,] *the facts and circumstances within the[ officer's] knowledge* and of which they had reasonably trustworthy information were sufficient" (emphasis added)).  It is undisputed that the police were aware that Perez possessed the vehicle.  When the officers arrived on the scene, they were informed that it was Perez's vehicle that had sideswiped their vehicle and caused damage to the driver's side front door and mirror.  Dkt. No. 53 ¶ 8.  The officers were entitled to rely upon information provided by eyewitnesses.  *See Savarese*, 547 F. Supp. 3d at 326 (holding that "[t]he arresting officers need not have seen Plaintiff and Reen in the middle of the criminal act in order to have probable cause to arrest Plaintiff" and citing cases).  It also is undisputed that Edwards personally observed several bottles of wine, some of which were opened, in the backseat of Perez's vehicle.  *Id.* ¶ 10.  Finally, the vehicle was on a "public highway"—it was on 7th Avenue and 122nd Street in Manhattan.  *Id.* ¶ 1.  Perez was handcuffed and then taken to the precinct. *Id.* ¶¶ 12–13.  Those facts, known to Edwards and the arresting officers, were sufficient to establish probable cause.  *See Cox v. City of New York*, 2014 WL 3696003, at *6 (E.D.N.Y. July 23, 2014) (finding probable cause when plaintiff, in the backseat, had an "open-container of alcohol between his feet"); *see also Oquendo v. City of New York*, 2017 WL 6729850, at *6 (E.D.N.Y. Nov. 15, 2017), *aff'd*, 774 F. App'x 703 (2d Cir. 2019)  (holding that "[t]he presence of the beer bottle in a running vehicle on a public road, with plaintiff asleep at the wheel" provided probable cause); *People v. Knight*, 167 N.Y.S.3d 186, 187 (2d Dep't 2022) (finding probable cause when there was "an open bottle of tequila" and a "smell of alcohol emanating from the vehicle"); *People v. Boykin*, 136 N.Y.S.3d 395, 396 (2d Dep't 2020) (finding probable cause when police observed "brown liquid in the cups in the front console and [a] smell emanating from the vehicle").

At oral argument, Perez contended that the officers did not have probable cause because they did not know that the open bottles of wine actually contained wine.  For example, the bottles could have been empty.  Perez did not press this contention in her Response to Defendants' Rule 56.1 Statement, which agreed that it was undisputed that "Edwards also observed several bottles of wine, some of which were opened, in the backseat of Noheme Perez's vehicle."  Dkt. No. 53 ¶ 10.  Nor did she raise this argument in her opposition brief.  It is therefore waived.  *See, e.g.*, *Brooke v. Cnty. of Rockland*, 2021 WL 809320, at *7 (S.D.N.Y. Mar. 3, 2021) (finding argument waived when plaintiff did not raise facts in Opposition to Rule 56.1 Statement or in their opposition brief).  Even if the argument were not waived, it is without merit in any event.  Probable cause is a "flexible, easily applied standard" that requires only "a fair probability" that a crime was committed.  *Illinois v. Gates*, 462 U.S. 213, 238–39 (2012).  The police need not exclude every inference of innocence before it effects an arrest.  *See Ricciuti*, 124 F.3d at 128 ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Savarese*, 547 F. Supp. 3d at 331 (concluding that testimony, unknown to officers at the time of arrest, cannot make such an arrest lack probable cause when there was direct evidence of Plaintiff's commission of the criminal offense).  Edwards observed wine bottles—as opposed to other containers for liquids—at the time of the arrest; it was a fair inference to believe that there was liquid inside the bottles and that the liquid was alcohol.  *Cf. United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008) (finding troopers had probable cause to search vehicle upon seeing "open beer can" being transported in the vehicle in violation of state law); *United States v. Manuel*, 2014 WL 6603949, at *2 (S.D.N.Y. Nov. 20, 2014), *aff'd*, 647 F. App'x 11 (2d Cir. 2016) (distinguishing, under a

reasonable suspicion standard, a "disposable cup" from a "plastic soda bottle, water bottle, or reusable travel container, all of which are commonly associated with non-alcoholic beverages"). Edwards was not required to confirm what the evidence suggested—that the bottles did, in fact, contain wine. Any such requirement would make Section 1227 practically unenforceable, as Plaintiff's counsel implicitly conceded at argument. The law prohibits the possession of an open container containing an alcoholic beverage *in* a motor vehicle, but under the Fourth Amendment, a vehicle can be searched to determine that the open container which says "wine" in fact contains wine only with probable cause. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *United States v. Navas*, 597 F.3d 492, 498 (2d Cir. 2010) ("when a vehicle is both inherently mobile and subject to a reduced expectation of privacy . . . [,] a warrantless search supported by probable cause is permissible under the automobile exception."); *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) ("[P]olice may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime."). It necessarily must follow that the police need not know in advance that an open bottle with a wine label in fact contains wine before executing a search. Were it otherwise, the police would rarely be able to enforce Section 1227. It would essentially require a self-report. In any event, there was more here as discussed below—the police also received information that Perez had sideswiped another vehicle. Dkt. No. 53 ¶ 8. Thus, there was probable cause, or at minimum arguable probable cause, for the arrest.[14]

---

[14] Even though Perez claimed that she did not consume or intend to consume the wine bottles, such a finding is not necessary to find probable cause for a violation of Section 1227.

Perez also alleges that her arrest was conducted "in retaliation" for her "recording officers at the scene." *Id.* In particular, she asserts that she was arrested because she had been "aggressively recording officers on the scene." Dkt. No. 51 at 18. But that assertion, even if credited, fails to negate the existence of probable cause. Probable cause is an objective analysis that does not consider an officer's subjective motive. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Perez's allegation of retaliation is thus immaterial on summary judgment as to whether there was probable cause for her arrest.

## III.   Malicious Prosecution

Plaintiff alleges that following her arrest, she was "subsequently charged with Operating a Motor Vehicle While Intoxicated and other related charges," and that she was "thereafter maliciously prosecuted, until the respective charges were each dismissed." Dkt. No. 1 ¶ 2. Defendants argue that summary judgment on Perez's malicious prosecution claims is warranted because (1) probable cause existed to initiate proceedings; (2) Perez's resolution of her criminal proceeding with an ACD was not a termination in her favor; and (3) the Defendants are entitled to qualified immunity because arguable probable cause existed for the proceedings. Dkt. No. 41 at 11–12, 19. Plaintiff responds that probable cause and arguable probable cause was lacking for the prosecution for the same reason it was lacking for her arrest and that the dismissal was a favorable termination. Dkt. No. 51 at 12–13, 17–19.

"To state a § 1983 malicious prosecution claim a plaintiff 'must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'" *Rodriguez v. City of New York*, 2022 WL 3587598, at *5–6 (S.D.N.Y.

Aug. 22, 2022) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022)).  Under New

York law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a

proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."

*Savino*, 331 F.3d at 72.  The "section 1983 . . . federal claim [of malicious prosecution] . . .

borrow[s] the elements of the underlying malicious prosecution tort from state law."  *Cook v.

Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994).  In addition, to prevail on a cause of action for malicious

prosecution under Section 1983, the plaintiff must establish that "there was a sufficient post-

arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v.

New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).  "The Fourth

Amendment right implicated in a malicious prosecution action is the right to be free of

unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwarranted

restraints on personal liberty.  A plaintiff asserting a Fourth Amendment malicious prosecution

claim under § 1983 must therefore show some deprivation of liberty consistent with the concept

of 'seizure.'"  *Id.* (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)); *see

Rodriguez*, 2022 WL 3587598, at *6; *Roman v. City of Mount Vernon*, 2022 WL 2819459, at *10

(S.D.N.Y. July 19, 2022) ("In addition to the elements of a state-law malicious prosecution

claim, however, to state a federal malicious prosecution claim under § 1983, a plaintiff must also

have suffered a post-arraignment deprivation of liberty implicating his Fourth Amendment

rights.").

      Defendants' primary argument is that Plaintiff cannot show favorable termination of her

criminal proceedings.  That argument is without merit.  Defendants contend that an "ACD bars a

malicious-prosecution claim because it leaves the question of innocence or guilt unanswered and

is thus not a termination indicative of innocence."  Dkt. No. 41 at 11 (quoting *Smalls v. Collins*,

10 F.4th 117, 143 (2d Cir. 2021) (citing, *inter alia*, *Singleton v. City of New York*, 632 F.2d 185, 193–94 (2d Cir. 1980))).  That argument may have had merit when Defendants filed their opening brief in support of the motion for summary judgment on January 21, 2022.  On April 4, 2022, however, the Supreme Court decided *Thompson v. Clark*, 142 S. Ct. 1332 (2022), rejected the Second Circuit test for favorable termination, and held that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction," *id*. at 1335.  In light of *Thompson*, Defendants' argument is meritless.

In *Singleton*, 632 F.2d 185, a divided Second Circuit held, over the dissent of Judge Weinstein, that "[a]n 'adjournment in contemplation of dismissal' . . . d[oes] not constitute a termination in favor of appellant."  *Id*. at 193.  The Circuit reasoned that "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty," and that an ACD did not do so because "a dismissal pursuant to [N.Y. Crim. Pro. L.] § 170.55[, the procedure for an ACD,] is not the equivalent of a verdict or finding that the defendant is not guilty of the offense charged against him."  *Id.* at 193.  In so doing, the court relied on the Restatement (Second) of Torts § 660, Comments a & b (1977) for the proposition that "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty."  *Id.* (quoting Restatement (Second) of Torts § 660, Comments a & b (1977)).  The court reasoned that an ACD "does not authorize a finding of 'not guilty.'"  *Id.* at 194.  It also stated that "[i]f an adjournment in contemplation of dismissal were held to be a result favorable to the defendant for purposes of bringing an action for malicious prosecution, fewer prosecutors would be willing to consent to such adjournments" for "the issue of guilt or innocence [would] in any event . . . be litigated in a civil suit."  *Id.*

*Singleton* has since been followed by the Second Circuit's decision in *Lanning v City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018), in which the court held that a Section 1983 claim for malicious prosecution requires proof that the criminal proceedings ended with affirmative indications of innocence, *id.* at 25.

In *Thompson*, however, the Supreme Court explicitly overruled *Lanning* and held that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." 142 S. Ct. at 1335.  In particular, the Court rejected the argument that to show a favorable termination "the plaintiff [must] also show that his prosecution ended with some affirmative indication of innocence." *Id.* at 1338.  The Court concluded that the reliance that *Lanning*, and *Singleton* before it, placed on the American Law Institute's Restatement (Second) of Torts was "flawed because the Restatement did not purport to describe the consensus of American law as of 1871, at least on that question." *Id.* at 1340.  It stated, *contra* the Second Circuit, that "the American tort-law consensus as of 1871 did not require a plaintiff in a malicious prosecution suit to show that his prosecution ended with an affirmative indication of innocence." *Id.*  Undercutting the Second Circuit's and Defendants' reasoning, it rejected the notion that treatment of a dismissal without reasons as a favorable termination would lead inevitably to a civil case on the issue of guilt or innocence, stating that "requiring a plaintiff to show that his prosecution ended with an affirmative indication of innocence is not necessary to protect officers from unwarranted civil suits—among other things, officers are still protected by the requirement that the plaintiff show the absence of probable case and by qualified immunity." *Id.* at 1340–41.  The Court also reasoned that "requiring the plaintiff to show that his prosecution ended with an affirmative indication of innocence would

paradoxically foreclose a § 1983 claim when the government's case was weaker and dismissed without explanation before trial, but allow a claim when the government's evidence was substantial enough to proceed to trial." *Id.* at 1340.

Based on *Thompson*, Plaintiff has established favorable termination. *See Grytsyk v. Morales*, 527 F. Supp. 3d 639, 653 (S.D.N.Y. 2021) ("It is well established that a district court must follow a precedential opinion of the Second Circuit 'unless and until it is overruled . . . by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.'" (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd,* 854 F.3d 197 (2d Cir. 2017))).  Perez's case ended in an ACD.  Dkt. No. 53 ¶ 27.  That ACD culminated in a dismissal of all her charges.  Dkt. No. 44-12.  Plaintiff has met the favorable termination requirement.  *See Smith v. Town of Lewiston*, 2022 WL 3273241, at *9 (W.D.N.Y. Aug. 11, 2022) (finding that there is no requirement that Plaintiff show affirmative indications of innocence after *Thompson*).

Defendants also argue that there was probable cause for initiating the prosecution against Perez.  "[I]f there was probable cause for the prosecution, then no malicious prosecution claim can stand." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

The officers had probable cause that Perez had engaged in aggravated unlicensed operation of a motor vehicle in violation of New York VTL § 511(1)(A).  That provision provides that "[a] person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner."  N.Y.

VTL § 511(1)(A).  The crime is classified as a misdemeanor and is punishable by a sentence of a fine of not more than $500 or a term of imprisonment of not more than 30 days, or both.  *Id.* § 511(b).  "An officer has probable cause to arrest a driver [for a violation of Section 511(1)(a) if a check of the driver's license in the computerized police database shows that the license is suspended."  *Feliz v. City of New York*, 2022 WL 446043, at *5 (S.D.N.Y. Feb. 14, 2022) (Nathan, J.) (citing *Briukhan v. City of New York*, 147 F. Supp. 3d 56, 61 (E.D.N.Y. 2015) (in turn citing New York VTL § 511(1)(A))); *see also McGuire v. City of New York*, 2004 WL 307308, at *3 (S.D.N.Y. Feb. 13, 2004), *aff'd*, 142 F. App'x. 1, 3 (2d Cir. 2005) (same).  In addition, "an officer has probable cause for arrest even if the information in the database was erroneous, so long as the officer did not know or have reason to know that the information was false or unreliable."  *Feliz*, 2022 WL 446043, at *5 (internal quotation marks omitted).  At the same time, "readily available exculpatory evidence" can dispel probable cause.  *Id.*  A "motor vehicle" is "[e]very vehicle operated or driven upon a public highway which is propelled by any power other than muscular power."  N.Y. VTL § 125.  The term "[o]perate" encompasses activity "broader than that of driving," and constitutes "any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle."  *People v. Prescott*, 95 N.Y.2d 655, 662 (2001) (citation omitted).

It is undisputed that after Perez was "escorted to the police precinct," Dkt. No. 53 ¶ 13, Edwards "ran a computer check of the New York State Department of Motor Vehicle Records and learned that Noheme Perez's driver's license was suspended for failure to answer a New York summons," *id.* ¶ 14.  In support of that paragraph, Defendants' Rule 56.1 Statement cites the criminal complaint, which further provides that "all such summons have printed on them, 'If you do not answer this ticket by mail within fifteen days your license will be suspended,'" and

that such "suspension occurs automatically (by computer) within four weeks of the defendant's failure to answer."  Dkt. No. 44-11.  The summons provides that Perez was operating her car while "knowing or having reason to know" that her license was suspended.  Perez never claims that she never received a summons or that there was some defect with DMV notice procedures. *See McGuire*, 2004 WL 307308, at *3 (concluding that "arresting persons for violation of Section 511(1) of the Vehicle and Traffic Law solely on the basis of computer checks of DMV records showing the drivers' suspensions" is not constitutionally defective due to a lack of probable cause because "an arresting officer has every reason to believe that the motorist has received adequate notice through the mail that the motorist's license has been suspended"); *see also Mahase v. City of New York*, 2000 WL 263742, at *3 (E.D.N.Y. Jan. 5, 2000) (stating, with respect to the intent requirement of Section 511, that "[a] computer printout showing that [the plaintiff] was driving with a suspended license is 'reasonably trustworthy information' that she knew her license was suspended").  It is further undisputed that Riley and King had informed the officers at the scene that "Perez sideswiped their vehicle," Dkt. No. 53 ¶ 8, leading to the reasonable inference that Perez had been operating a motor vehicle on a public highway, *see supra* Section II.

Plaintiff has identified no "readily available exculpatory evidence" that dispels probable cause.  *Feliz*, 2022 WL 446043, at *5.  She argues in her opposition brief that she was in possession of a valid Florida driver's license at the time she was charged with unlicensed driving, implying that this indicates the unfounded nature of her prosecution.  Dkt. No. 51 at 9. But there is nothing in the record indicating that Defendants were aware of her Florida license before they filed their criminal complaint or that such information was readily available to them. Perez's Response to Defendants' Rule 56.1 Statement also did not raise the existence of Perez's

35

Florida license as a "genuine issue to be tried."  S.D.N.Y. Loc. Civ. R. 56.1(b).  In addition, even if Perez does possess a valid Florida license, that would not permit her to drive in New York with a suspended New York driver's license or constitute a defense to the charge of aggravated unlicensed operation of a motor vehicle in New York.  *See*, *e.g.*, *People v. Fong*, 901 N.Y.S.2d 909, at \*2 (Nassau Cnty. Dist. Ct. 2009) ("[T]he Defendant's allegation that he held a valid Illinois driver's license on the dates in question does not prevent his conviction for aggravated unlicensed operation of a motor vehicle [under Section 511(1)(a)] or unlicenced operation of a motor vehicle." (citing *Vanderminden v. Tarantino*, 871 N.Y.S.2d 760 (3d Dep't. 2009))).  Plaintiff's New York license was suspended for failure to respond to a summons.  She could not avoid that consequence and regain the right to drive in New York by the expedient means of obtaining a license from another state.  *Fong*, 901 N.Y.S.2d at \*2.

The existence of probable cause for a violation of Section 511(1)(a) necessarily establishes probable cause for a violation of Section 509.  *See Leckie v. Robinson*, 2020 WL 5238602, at \*12 (S.D.N.Y. Feb. 6, 2020), *report and recommendation adopted sub nom. Leckie v. Robinson*, 2020 WL 2114846 (S.D.N.Y. May 4, 2020) ("[P]laintiff's plea of guilty to the more serious charge of assault under PL § 120.05(2) serves as conclusive evidence that probable cause also existed as to the lesser charge under PL § 265.01(2)—because, as noted above, the charges arise from the same incident, the elements of the two charges overlap, and plaintiff pled guilty to the more serious charge."); *Cf. Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir.1989) (reversing dismissal of malicious prosecution claim on the basis of favorable termination when the acquitted charge, compared to convicted charge, had different elements, was not a lesser included offense, and carried a potentially longer prison sentence).  Section 511(1)(a) is a similar and greater violation relative to the charge of unlicensed driving under Section 509.  Section 509

36

provides that "no person shall operate or drive a motor vehicle upon a public highway of this state . . . unless he is duly licensed pursuant to the provisions of this chapter.  N.Y. VTL § 509.  Section 511(1)(a) thus provides a higher bar for violative conduct through its *mens rea* requirement.  New York courts have established that Section 509 is a lesser included offense of Section 511(1)(a).  *See People v. Serrano*, 110 N.Y.S.3d 112, 113 (1st Dep't 2019) (describing the "lesser included offense of 'unlicensed operation ([VTL] § 509)'" relative to Section 511(1)(a) in the context of double jeopardy).  Moreover, Section 509 is simply a traffic infraction and not a misdemeanor, *see* N.Y. VTL §§ 175, 509; *People v. Watson*, 576 N.Y.S.2d 370, 370 (2d Dep't 1991) ("Driving without a license is a *traffic infraction* which justifies a police officer's immediate arrest of the unlicensed operator.  *See* Vehicle and Traffic Law § 509." (emphasis added)).  Therefore, there was probable cause to charge Perez for violating Section 509 as well.

The existence of probable cause to charge Perez with violations of Sections 511(1)(a) and 509(1), however, does not end the analysis.  The Second Circuit has cautioned that "[courts] should not allow a finding of probable cause on [a] charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior."  *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).  The concern is that "an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses."  *Id*.  In other words, the State or officers exercising state authority are not excused from defending against a serious charge that is levelled maliciously and without probable cause solely because they have probable cause for a lesser charge.  If the greater charge effects a deprivation of liberty that would not be effected by

the lesser charge as to which there is probable cause, the plaintiff can still bring a claim of malicious prosecution.  In determining whether the charges involve "different, and more culpable, behavior," *Posr*, 944 F.2d at 100, courts consider "relative seriousness of the two offenses[,] 'whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people.'" *Harley v. Suffolk Cnty. Police Dep't*, 2012 WL 642431, at *8 n.5 (E.D.N.Y. Feb. 28, 2012) (Bianco, J.) (quoting *Pichardo v. N.Y. Police Dep't*, 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998), in turn citing *Janetka*, 892 F.2d at 190); *see also Dawkins v. Williams*, 511 F. Supp. 2d 248, 272 (N.D.N.Y. 2007) (drawing on the *Janetka* factors).

The criminal complaint signed by Edwards also charged Perez with resisting arrest in violation of N.Y. Penal Law § 205.30, operating a motor vehicle while impaired in violation of N.Y. VTL § 1192(1) ("driving while ability impaired" or "DWAI"), and operating a motor vehicle while intoxicated in violation of N.Y. VTL § 1192(3) ("driving while intoxicated" or "DWI").  Dkt. No. 44-11.  Each of the charges of resisting arrest, DWAI, and DWI involved different conduct than the charges of aggravated unlicensed operation of a motor vehicle.  Moreover, resisting arrest and DWI are categorized as misdemeanor crimes under New York law and carry a greater potential sentence than either of the charges under Sections 511(1)(a) and 509(1).  *See* N.Y. Penal L. § 205.30 (providing that resisting arrest is a Class A misdemeanor which carries a sentence of up to one year in prison); N.Y. VTL § 1193(1)(b) (providing that DWI is a misdemeanor which carries a sentence of up to one year in prison).  Although DWAI carries a lesser sentence, *see id.* § 1193(1)(a) (providing that DWAI is a traffic infraction that carries a sentence of up to 15 days in prison), it is not a lesser included offense and the Court cannot say on this record, without any briefing or argument, that it is less serious.

Defendants have not argued or identified undisputed facts to establish that there existed probable cause to believe that Perez was guilty of resisting arrest. N.Y. Penal Law § 205.30 provides that "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal L. § 205.30. Notably, neither party proffers any facts in the Rule 56.1 Statement or its Response on Perez's actions or alleged "resistance" at the time of her arrest. Nor do the parties cite the video exhibit of Perez's arrest in any manner in their Rule 56.1 Statements. In addition, neither party mentions probable cause for that charge in their briefing on this motion. Defendants' Rule 56.1 Statement is silent as to the critical question of probable cause for the resisting arrest charge. *See also Napoleon v. 5665 Sunrise Hwy Corp.*, 2020 WL 6385309, at *3 (E.D.N.Y. July 30, 2020), *report and recommendation adopted*, 2020 WL 5757534 (E.D.N.Y. Sept. 28, 2020) (finding that when neither party submitted Rule 56.1 statement, it created "more than just an academic problem," and recommending denying summary judgment); *Kinojuz I.P. v. IRP Int'l Inc.*, 2014 WL 1271162, at *1 (E.D.N.Y. Mar. 26, 2014) (denying summary judgment when "[n]either party has provided clear evidence" as to dispositive issue).

Defendants also have not shown the absence of a triable issue on whether there was probable cause, or arguable probable cause, for the DWAI and DWI charges. For a claim of malicious prosecution, "[t]he existence of probable cause is measured 'as of the time the judicial proceeding is commenced . . . , not the time of the preceding warrantless arrest.'" *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) (quoting *Davis v. City of New York*, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005)). "Information obtained 'after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause' for a

malicious prosecution claim." *Id.* (quoting *Jackson v. City of New York*, 939 F. Supp. 2d 235, 251 (E.D.N.Y. 2013)).  Section 1192(1), titled "Driving while ability impaired," provides that "[n]o person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol."  N.Y. VTL § 1192(1).  New York courts have defined the term "impairment" as "whether, by voluntarily consuming alcohol, this particular defendant has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *People v. Cruz*, 48 N.Y.2d 419, 427 (N.Y. 1979).  "[N]ot . . . every person who drinks before driving violates the law," as Section 1192(1) "takes into account the 'subjective' tolerance of individuals." *Id*. at 426.  Section 1192(3), titled "Driving while intoxicated," in contrast, provides that "[n]o person shall operate a motor vehicle while in an intoxicated condition."  N.Y. VTL § 1192(3).  Section 1192(3) differs primarily from Section 1192(1) by requiring a greater degree of intoxication for a violation.  New York courts have defined this standard as "incapacity to perform various mental or physical acts which an average person would be able to do." *Cruz*, 48 N.Y.2d at 427.  In other words, intoxication occurs when the person "voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Id.* at 428.  Thus, while a DWAI violation requires only "impairment," a DWI violation requires "incapacity."

There are genuine and material issues of fact as to the Individual Defendants' knowledge of Perez's sobriety following her arrest and before the filing of the criminal complaint.  The evidence, when construed in favor of the non-moving party, shows that by the time that Perez was charged, the police knew that Perez had agreed to take a sobriety test and had asked for it to

be administered, Dkt. No. 44-2 at 106, 108, 115, had requested to "do the [test involving the] walk and the eye and the eye and hand coordination" to which an officer said "he doesn't do that up here," *id*. at 108–09, and had expressed a willingness to take a blood test at the precinct, *id*. at 109–10.  There are also questions of fact as to whether the police could have observed—as Edwards claimed in her declaration—that Perez had bloodshot eyes when she was wearing dark glasses.  And Perez's testimony that she had not had alcohol that day and could not remember the last time she had imbibed, Dkt. No. 44-2 at 93–94, could call into question the veracity of the testimony from the officers that she had "glossy" eyes.  The hospital where Perez was taken later that evening also had reported that "[Perez] is not intoxicated."  Dkt. No. 52-1.  Such issues of fact implicate the knowledge of both Individual Defendants as to whether Perez was "impaired," let alone "intoxicated," and whether they actively disregarded or failed to investigate readily available exculpatory evidence material to the existence of probable cause.  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.");  *Feliz*, 2022 WL 446043, at *5 (declining to grant motion to dismiss on the basis of probable cause because "[d]efendants disregarded readily available exculpatory evidence that would have dispelled probable cause"); *Cf. United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996) (failure to administer road sobriety test indicated lack of reasonable suspicion of driver's intoxication); *Hoyos*, 999 F. Supp. 2d at 390 (concluding that "plaintiff's *refusal* to take a videotaped breathalyzer test at the 115th precinct is admissible evidence from which a jury could conclude that Hoyos was intoxicated" (emphasis added)).  In addition, such disputed facts preclude summary judgment on the basis of qualified immunity because they are "material to a determination of reasonableness" of the charging decisions by Edwards, *see Thomas v. Roach*,

165 F.3d 137, 143 (2d Cir. 1999).  A jury could reasonably conclude, based on these facts, that neither Wyrick nor Edwards had probable cause or arguable probable cause for charging her with DWAI or DUI.

Finally, Defendants have not argued in their memoranda in support of summary judgment that the bringing of charges as to which Defendants have not shown probable cause did not result in a greater restriction on Plaintiff's liberty than the charges as to which Defendants have shown probable cause or identify that issue as one as to which the Plaintiff did not have admissible evidence.[15]  Although as to any issue on which Plaintiff bore the ultimate burden (such as the deprivation of liberty), Defendants might have been able to discharge their obligation on summary judgment by pointing to the absence of evidence, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (holding that the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact" (citation omitted)), Defendants have failed even to do that.  Accordingly, Defendants have failed to meet their burden on summary judgment.  *See also Bridgeforth v. Zerafa*, 2018 WL 11217202, at *1 (S.D.N.Y. Nov. 19, 2018) ("Without factual statements, the Court is 'unable to adequately assess

---

[15] Defendants, in their letter to the Court, appear to agree that prosecution for greater charges may impose a distinct injury.  *See* Dkt. No. 67 at 2 ("Because plaintiff was going to be prosecuted for greater charges that are supported by probable cause, no distinct injury would be suffered by also prosecuting Plaintiff for lesser charges.").  With respect to the DWAI charge, the Defendants did not introduce evidence, or make any statement in their Rule 56.1 Statement, as to the effect of the DWAI charge on Perez's sentence and whether it would effect a lesser deprivation of liberty at the time of prosecution.

whether there exist any genuine issues of material fact,' and questions of 'evidence sufficiency' abound." (internal citations omitted)).[16]

## IV.    Excessive Force

Perez alleges in her complaint that the police used excessive force in effecting her arrest. She alleges that Defendants were "shoving her before proceeding to violently and unnaturally contort her arms and wrists behind her back," Dkt. No. 1. ¶ 20, and that they "applied the handcuffs to [her] in an excessively forceful and tight fashion, which caused her to suffer substantial pain and discomfort," *id*. ¶ 21.  Defendants argue that the arresting officer was not Edwards based on Perez's identification and that the officers had probable cause that Perez had committed a crime, which comes with the right to use some force.  Dkt. No. 41 at 9–10.  The Court first addresses claims that Edwards directly used excessive force before addressing whether Edwards failed to intervene while other officers used excessive force.

Perez has not established a genuine issue of fact as whether Edwards directly used excessive force and, as a result, Defendants are entitled to summary judgment.  The only evidence Perez identifies in response to Edwards' assertion that she did not use excessive force against Perez, Dkt. No. 53 ¶ 17, Dkt. No. 44-3 ¶ 11, are the videos produced by the City, Dkt. No. 53 ¶ 17A.  But those videos do not capture the time of her arrest at the scene of the accident, which is the sole excessive force claim in Perez's complaint.  They instead only capture her transportation from a holding cell to the highway room.  Although Perez, in her opposition brief,

---

[16] Defendants, however, are entitled to dismissal of the claim of malicious prosecution against Wyrick based on the charge of resisting arrest.  It is undisputed that Wyrick was not involved in the arrest.  Dkt. No. 53 ¶ 19 ("Wyrick started his tour . . . after Noheme Perez was already in police custody.").  Wyrick, however, is not entitled to dismissal of the claim of malicious prosecution based on the charges of DWAI or DWI because he forwarded allegedly false information to the District Attorney and Edwards regarding Perez's state of intoxication.  *See supra* Section I.

asserts that she was "violently handled by officers at the 28th Precinct when she was transported," Dkt. No. 51 at 10, Perez's complaint never alleged any excessive force violations from that incident.  Given that the "central purpose of a complaint is to provide the defendant with notice of the claims asserted against it," *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (Sotomayor, J.), and that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint," *Smith v. City of New York*, 385 F. Supp. 3d 323, 338 (S.D.N.Y. 2019) (internal quotation marks omitted), this claim is waived.  *See*, *e.g.*, *Mauro v. S. New England Telecommunications, Inc.*, 208 F.3d 384, 386 (2d Cir. 2000) ("Because Mauro did not include this claim in his complaint, the district court refused to consider it.  We will not disturb this decision on appeal."); *see also Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir. 1956) (same).

Even if the Court did consider this claim, there is no evidence that Edwards was involved with her transportation to the highway room.  Perez testified that Edwards was not even present at the time.  Dkt. No. 44-2 at 35–36 (testimony that Edwards was not present when Plaintiff was transported from the holding cell to highway room).  Accordingly, even if the claim were properly pled in Perez's complaint, Edwards would be entitled to summary judgment.

As a result, Perez does not cite to *any* supporting materials that concern the actual allegations in her complaint.  As to her allegations regarding the contortion of her wrists and arms behind her back and the application of handcuffs, it is undisputed that the person who placed handcuffs on her was a dark-skinned male officer and that Edwards is an African-American female police officer.  Dkt. No. 53 ¶¶ 12, 16.  Indeed, Perez was escorted to the police precinct by two non-Caucasian male police officers, plainly not fitting the description of

Edwards.[17]  Dkt. No. 53 ¶ 13.  Perez does not cite any of her deposition testimony, statements

from the officers, or the video regarding the arrest, thus failing to present any genuine dispute of

fact about Edwards' use of excessive force, or lack thereof, during Perez's arrest.  Summary

judgment on the excessive force claims against Edwards, as pleaded in the complaint, is

warranted.  *See Knight v. N.Y.C. Hous. Auth.*, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)

("[S]tatements are deemed to be admitted where [the non-moving party] has failed to specifically

controvert them with citations to the record.").

## V.      Failure to Intervene

Defendants also contend that summary judgment is warranted on the failure to intervene

claims because there was no underlying constitutional violation and the Defendants were not

otherwise present to witness any such violations.  "It is widely recognized that all law

enforcement officials have an affirmative duty to intervene to protect the constitutional rights of

citizens from infringement by other law enforcement officers in their presence." *Terebesi v.

Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d

Cir. 1994)).  "A police officer may be liable for failure to intervene under § 1983 where (1) the

officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in

the officer's position would know that the victim's constitutional rights were being violated; and

(3) the officer does not take reasonable steps to intervene." *Rodriguez v. City of New York*, 2018

WL 2371719, at *4 (S.D.N.Y. May 24, 2018) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp.

2d 501, 512 (S.D.N.Y. 2008)).  "An officer who fails to intercede in the use of excessive force or

another constitutional violation is liable for the preventable harm caused by the actions of other

officers." *Torreso*, 764 F.3d at 243.  "In order for liability to attach, there must have been a

---

[17] Any allegation of excessive force based on her transportation to the precinct was not alleged in the complaint and independently warrants summary judgment on that basis.

realistic opportunity to intervene to prevent the harm from occurring." *Anderson*, 17 F.3d at 557.

"Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury,

unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'"

*Torreso*, 764 F.3d at 244.  With respect to excessive force, "[a] police officer is under a duty to

intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be

held liable for his failure to do so if he observes the use of force and has sufficient time to act to

prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016).

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force

by a police officer in the course of effecting an arrest." *Tracy*, 623 F.3d at 96.  "[A]ll claims that

law enforcement officers have used excessive force . . . in the course of an arrest, investigatory

stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  A police officer's

use of force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of

New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397).  "In

determining whether the force used in a particular case was unreasonable, courts should look 'to

the facts and circumstances of each particular case,' including, among other things, 'the severity

of the crime at issue.'" *Davis v. Rodriguez*, 364 F.3d 424, 436 (2d Cir. 2004) (quoting *Graham*,

490 U.S. at 396).  "In conducting that balancing, we are guided by consideration of at least three

factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect

poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was

actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96.  "[T]he

right to make an arrest or investigatory stop necessarily carries with it the right to use some

degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. A plaintiff alleging failure to intervene faces an additional hurdle—that of showing that a reasonable person in the officer's position would know that the victim's constitutional rights were being violated. "A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Cugini v. City of New York*, 941 F.3d 604, 608 (2d Cir. 2019).

As previously noted, Perez has cited no supporting materials regarding her arrest in her Response to Defendants' Rule 56.1 Statement, and summary judgment is warranted on that basis. Moreover, an "assiduous review of the record" before the Court reveals no evidence from which a jury could find that excessive force was used against Perez in connection with her arrest, much less that "the unreasonableness of the force used was apparent." *Cugini*, 941 F.3d at 608. "'[I]t is . . . well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights.'" *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) (quoting *Mesa v. City of New York*, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (cleaned up)); *see also Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (same). "[T]he right to effectuate an arrest does include 'the right to use some degree of physical coercion.'" *Kayo*, 531 F. Supp. 3d at 797 (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005)). Perez's complaint centers on a single unitary set of events at the time of her arrest—her arms were placed behind her back violently and unnaturally and she was handcuffed in a forceful and tight fashion. The episode of which Perez complains lasted no more

than a second or two and ended when the handcuffs were placed on her.  There is no evidence that the infliction of force was malicious or gratuitous, or that force was used for any purpose other than to restrain her.  Perez does not testify in her deposition as to any injury arising from the arrest, let alone that such injury would be more than *de minimis*, given the circumstances. *See Forbes v. Doe*, 2022 WL 170605, at *7 (W.D.N.Y. Jan. 18, 2022) ("[A] plaintiff must allege he suffered an injury."); *Wims v. New York City Police Dep't*, 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) (holding that although an individual need not suffer a severe injury to assert a constitutional claim, some type of injury is required); *see also Kayo*, 531 F. Supp. 3d at 798  ("[Plaintiff's] injuries, on their own, are simply too *de minimis* to give rise to a dispute of fact.").  Indeed, Perez did not testify that she was ever injured from this arrest or hint that the officers used excessive force.  *See* Dkt. No. 44-2 at 19, 69.  And "excessive force claims require 'serious or harmful,' not 'de minimis' use of force."  *Gutierrez v. City of New York*, 2015 WL 5559498, at *7 (S.D.N.Y. Sept. 21, 2015) (citing *Drummond v. Castro*, 522 F.Supp.2d 667, 678–79 (S.D.N.Y. 2007)).  The video of Perez's arrest—again, not cited by Perez in her Response to Defendants' Rule 56.1 Statement—also does not show that Edwards or her fellow officers used excessive force against Perez.  The entire time, Perez remains standing; she is never pinned against the ground or a wall or subdued in an excessively forceful manner by the officers.  *See*, *e.g.*, *Jennejahn v. Vill. of Avon*, 575 F. Supp. 2d 473, 480 (W.D.N.Y. 2008) (finding that there was no excessive use of force used on 65-year-old man when it involved "forceful grabbing, pulling, spinning, pushing, slapping down, clamping and twisting"); *see also id.* at 481 (listing comparatively more forceful conduct in which summary judgment was still granted).

As to the use of handcuffs specifically, "a court must consider (1) whether the handcuffs were unreasonably tight, (2) whether the defendants ignored the plaintiff's pleas that the

handcuffs were too tight; and (3) the degree of injury to the wrists." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015); *see Richardson v. New York City Health & Hospitals Corp.*, 2009 WL 804096, at *13 (S.D.N.Y. Mar. 25, 2009) (same).  There is nothing in the record indicating that the handcuffs were unreasonably tight, that Perez ever informed any of the officers at the scene of her arrest that her handcuffs were too tight, or that she suffered any injury.  Thus, "no reasonable jury could conclude that Plaintiff suffered a Fourth Amendment harm with respect to her excessive force claim." *Richardson*, 2009 WL 804096, at *14.

## VI.    Monell Liability

Perez alleges in her complaint that the acts committed against her are "representative of a pervasive policy, custom or pattern and practice within the City of New York and the NYPD" of "constitutionally violative behavior" that is "deliberately indifferent to . . . civil rights."  Dkt. No. 1 ¶ 29, 33.  She also cites a litany of news articles criticizing the NYPD for various reasons.  Defendants argue that there is no underlying constitutional violation for supporting a *Monell* claim and that the news articles fail to show deliberate indifference through a "policy or custom" of the City.  Dkt. No. 41 at 32–34.

The Court grants summary judgment on Perez's *Monell* claim.  Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  "Thus, to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  Liability will attach if the violation resulted from a

"government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *see also Barzilay v. City of New York*, 2022 WL 2657169, at *43 (S.D.N.Y. July 8, 2022).

> The means of showing an official "policy or custom" include the following:
>
> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Khanukayev v. City of New York*, 2012 WL 3538729, at *3 (S.D.N.Y. Aug. 13, 2012) (quoting *Jones v. Westchester Cnty. Dep't of Corrections*, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008)).

The City is entitled to summary judgment on Perez's *Monell* claim because there is nothing in the record indicating that Perez suffered injury as a result of a policy or custom of the City. Perez, in her opposition brief, simply argues that "there is no evidence on the record as to when said defendants acquired evidence for probable cause," that Perez "testified that she was not intoxicated," and that Perez "further assert[ed] she was arrested in retaliation to her recording of the officers at the scene." Dkt. No. 51 at 16. But none of these allegations, even if taken as true, rise to the level of showing a general policy or custom regarding the City, actions by those responsible for City policy, or a failure to train or supervise.

**CONCLUSION**

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 40.


SO ORDERED.

Dated: September 14, 2022
       New York, New York                    _____
                                             LEWIS J. LIMAN
                                             United States District Judge